1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9              FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   PHILLIPS 66 COMPANY,                    No.  2:15-cv-0368-TLN-KJN

12                  Plaintiff,

13        v.                                 ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14   PETROS RAI STATIONS, LLC, et al.,

15                  Defendants.

16

17        Presently before the court is plaintiff Phillips 66 Company's ("plaintiff") motion for

18   default judgment against defendants Petros Rai Stations, LLC ("Petros") and Amarjit S. Rai

19   ("Rai"), (collectively "defendants").[1]  (ECF No. 14.)  After defendants failed to file an opposition

20   to the motion in accordance with Local Rule 230(c), the court vacated the March 3, 2016 hearing,

21   requested supplemental briefing from plaintiff no later than March 24, 2016, and provided

22   defendants with an additional opportunity to oppose plaintiff's motion, including the

23   supplemental briefing, in writing no later than April 14, 2016.  (ECF No. 17.)  Thereafter,

24   plaintiff timely filed its supplemental briefing (ECF No. 18), but defendants again failed to

25   respond to the motion by the new deadline.

26   ////

27   _____

28   [1] This motion was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(19) and 28
     U.S.C. § 636(b)(1).

                                           1

1  For the reasons discussed below, the court recommends that plaintiff's motion for default

2  judgment be GRANTED.

3  I.  BACKGROUND

4  Plaintiff, a corporation incorporated in the State of Delaware and with its principal place

5  of business in the State of Texas, commenced this diversity action against defendants, Petros, a

6  business entity organized in California, and Rai, president of Petros and a California resident, on

7  February 13, 2015.  (See Complaint, ECF No. 1 at 1-5 ["Compl."], ¶¶ 2-5.)  In its complaint,

8  plaintiff alleges that, on September 24, 2007, ConocoPhillips and Petros entered into a Branded

9  Reseller Agreement ("Contract"), a franchise agreement requiring Petros to purchase a minimum

10  amount of fuel each month and to maintain certain image and signage standards in order to

11  maintain the franchise.  (Compl. ¶ 7; ECF No. 1 at 6-45.)  The Contract was for a term of 15

12  years beginning on September 24, 2007, and ending on September 30, 2022.  (Compl. ¶ 7; ECF

13  No. 1 at 11.)

14  The Contract contained a liquidated damages provision providing that if Petros breached

15  the Contract, ConocoPhillips was entitled to $0.03 for each gallon ConocoPhillips could

16  reasonably expect Petros to have purchased.  (ECF No. 1 at 29; Declaration of Chad

17  Cunningham, ECF No. 14-2 ["Cunningham Decl."], ¶ 3.)  ConocoPhillips' reasonable

18  expectation was defined as the minimum number of gallons which Petros was required to

19  purchase per month multiplied by the number of months and partial months remaining in the

20  term.  (Id.)

21  The Contract also contained a choice of law and choice of forum clause providing:

22
23  This Agreement shall be governed, construed and interpreted under
    and in accordance with the laws of the State where the Station is
    located.  Each party hereby expressly consents to exclusive
24  jurisdiction of the courts of the State where the Station is located
    and of any Federal court located in the State where the station is
25  located in connection with any action or proceeding arising out of
    or relating to this Agreement.
26

27  (Contract, Section 40, ECF No. 1 at 32.)

28  ////

2

1    The Station was located at "1206 E MARCH LANE, STOCKTON, CA 95210." (Compl.

2    at 35.)  Accordingly, the relevant state for purposes of the Contract's choice of law and forum

3    provision was California.

4    Plaintiff alleges that on October 20, 2009, ConocoPhillips loaned Petros $7,500.00 to

5    facilitate the purchase of gas under its Auto Gas Replacement Program.  (ECF No. 18 at 2; ECF

6    No. 18-1 at 3-4, 6.)  The program had a term of seven years, but if Petros was debranded, in other

7    words if the franchise rights under the Contract were terminated, the full amount would become

8    due immediately.  (Id.)  On August 17, 2011, the loan was renewed, thereby extending the term

9    until August 16, 2018.  (ECF No. 18-1 at 3-5.)

10   Plaintiff alleges that on or about November 24, 2009, Rai executed a Personal Guaranty

11   ("Guaranty") which guaranteed all present and future debts of Petros to ConocoPhillips.  (Compl.

12   ¶ 8; ECF No. 1 at 47.)  The Guarantee also contained a choice of law provision, providing that

13   Texas law would govern.  (ECF No. 1 at 47; see also Declaration of Dawn Ceizler, ECF No. 14-1

14   ["Ceizler Decl."], ¶ 2; Declaration of John G. George, ECF No. 14-3 ["George Decl."], ¶ 6; ECF

15   No. 14-4 at 4.)

16   Plaintiff alleges that on or about March 15, 2012, Petros defaulted on the Contract by

17   failing to purchase the required number of gallons of fuel and by failing to timely and fully pay

18   ConocoPhillips all amounts owed under the Contract.  (Compl. ¶ 9.)  Plaintiff also alleges that

19   ConocoPhillips terminated the contract on that same date as a result of Petros' breach.  (Id. at ¶

20   10.)

21   Plaintiff alleges that on May 1, 2012, "ConocoPhillips assigned all of its rights, title and

22   interest in the Contract and the Guaranty to [plaintiff]."  (Id. at ¶ 11.)  After the assignment,

23   plaintiff took over collecting on these contracts, sending Petros invoices for the amounts it

24   claimed Petros owed, the same amounts it claims in damages in its complaint.  (Compl. ¶  12;

25   ECF No. 1 at 54-56.)  On April 22, 2014, plaintiff's counsel sent final demand letters to both

26   Petros and Rai.  (Compl.  ¶ 12; ECF No. 1 at 48-53.)  Finally, plaintiff alleges that defendants did

27   not pay the amounts owed as of the date of the filing of the complaint.  (Compl. ¶ 13.)

28   ////

3

As a result of defendants' alleged breaches of the Contract and Guarantee, plaintiff requests liquidated damages of $479,387.34 and consequential damages of 7,500.00, as well as attorneys' fees, costs, and pre- and post-judgment interest.  (Id. at ¶ 12, 27.)[2]

Petros was served by personal service on its registered agent for service on May 23, 2015.  (ECF No. 12-1 at 4.)  After plaintiff was unable to serve Rai personally despite reasonable efforts on its part, plaintiff requested an order for alternative service by publication (ECF Nos. 5-8), which was granted on June 1, 2015 (ECF No. 9).  Plaintiff then served Rai by publication on June 10, 2015, June 17, 2015, June 24, 2015, and July 1, 2015.  (ECF No 12-1 at 6.)

On July 29, 2015 plaintiff filed a request for entry of default against both defendants.  (ECF No. 12.)  On July 30, 2015, the Clerk of Court entered default for both defendants.  (ECF No. 13.)

On January 27, 2016 plaintiff filed a motion for default judgment, seeking default judgment against both defendants named in the complaint.  (ECF No 14.)  In addition to its actual damages, plaintiff seeks pre-judgment interest from the date of the breach until the date of the default in the amount of $164,341.15, and pre-judgment interest from the date of the default at the rate of $133.39 per day.  (ECF No. 14 at 2.)  Plaintiff also seeks $14,469.50 in attorneys' fees and $1,149.66 in costs, as well as post-judgment interest from the date of the judgment under 28 U.S.C. § 1961.  (Id.)

II.      LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.

---

[2] The court refers to the final paragraph of plaintiff's complaint as paragraph 27, despite its apparent mislabeling as paragraph 25.  (ECF No 1 at 5.)

1    1980).  In making this determination, the court considers the following factors:

2
(1) the possibility of prejudice to the plaintiff, (2) the merits of
3
plaintiff's substantive claim, (3) the sufficiency of the complaint,
(4) the sum of money at stake in the action[,] (5) the possibility of a
4
dispute concerning material facts[,] (6) whether the default was due
to excusable neglect, and (7) the strong policy underlying the
5
Federal Rules of Civil Procedure favoring decisions on the merits.

6    Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

7    disfavored.  Id. at 1472.

8           As a general rule, once default is entered, well-pleaded factual allegations in the operative

9    complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc.

10   v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin.

11   Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs,

12   285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in the

13   complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the

14   pleadings, and claims which are legally insufficient, are not established by default."  Cripps v.

15   Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d

16   1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir.

17   2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law);

18   Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not

19   be entered on a legally insufficient claim.").  A party's default conclusively establishes that

20   party's liability, but it does not establish the amount of damages.  Geddes, 559 F.2d at 560.

21          III.    DISCUSSION

22                  A.  Appropriateness of the Entry of Default Judgment Under the Eitel Factors

23          For the reasons stated below, the undersigned finds that the material allegations of the

24   complaint support plaintiff's request for entry of default judgment under the Eitel factors.

25   ////

26   ////

27   ////

28

1          1. <u>Factor One: Possibility of Prejudice to Plaintiff</u>

2          The first <u>Eitel</u> factor considers whether the plaintiff would suffer prejudice if default

3   judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting

4   a default judgment.  <u>See</u> <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177.  Here, plaintiff would potentially

5   face prejudice if the court did not enter a default judgment.  Absent entry of a default judgment,

6   plaintiff would be without another recourse for recovery.  Accordingly, the first <u>Eitel</u> factor

7   favors the entry of a default judgment.

8          2. <u>Factors Two and Three: The Merits of Plaintiff's Substantive Claims</u>

9             <u>and the Sufficiency of the Complaint</u>

10         The undersigned considers the merits of plaintiff's substantive claims and the sufficiency

11  of the complaint together below because of the relatedness of the two inquiries.  The undersigned

12  must consider whether the allegations in the complaint are sufficient to state a claim that supports

13  the relief sought.  <u>See</u> <u>Danning</u>, 572 F.2d at 1388; <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1175.

14         As an initial matter, the court notes that there are two contracts at issue, each of which

15  form the basis of plaintiff's two claims, and both of which have choice of law provisions.  The

16  Contract provides that California law governs, while the Guaranty provides that Texas law

17  governs.  (ECF No. 1 at 32, 47.)  In its motion, plaintiff appears to assert its claims under both

18  contracts under California law (ECF No. 14-4 at 2-3), possibly due to the similar standards under

19  both bodies of law.  However, given the different applicable bodies of law, the court addresses

20  plaintiff's claims for breach of contract under the Contract and the Guaranty separately.

21         a. <u>Breach of Branded Reseller Agreement</u>

22         As this court sits in California and both defendants are residents of California, the choice

23  of law provision in the Contract stating that California law governs any claims brought under that

24  agreement is clearly enforceable.  <u>Hatfield v. Halifax PLC</u>, 564 F.3d 1177, 1182 (9th Cir. 2009);

25  <u>Nedlloyd Lines B.V. v. Superior Court</u>, 3 Cal. 4th 459, 466 (1992).

26         Under California law, the elements of a breach of contract claim are: "(1) the existence of

27  the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach,

28  and (4) the resulting damages to the plaintiff."  <u>McVicar v. Goodman Glob., Inc.</u>, 1 F. Supp. 3d

1044, 1056 (C.D. Cal. 2014) (citing <u>Oasis West Realty, LLC v. Goldman</u>, 51 Cal. 4th 811, 820 (2011)).  "Under the federal rules, a plaintiff may set forth the contract verbatim in the complaint or plead it, as indicated, by exhibit, or plead it according to its legal effect."  <u>Boland, Inc. v. Rolf C. Hagen (USA) Corp.</u>, 685 F. Supp. 2d 1094, 1102 (E.D. Cal. 2010).

Here plaintiff has pled the existence of a contract both by attaching the Contract as Exhibit A to its complaint (ECF No 1 at 6-45) and pleading the legal effects of the relevant provisions.  (Compl. ¶¶ 14-20.)  Plaintiff alleges that it performed its obligations by supplying the requested products, signage, and other image equipment under the Contract.  (<u>Id.</u> at ¶ 16.)  Plaintiff also alleges that Petros breached the Contract by failing to purchase the minimum amount of fuel and failing to timely and fully pay ConocoPhillips pursuant to the terms of that agreement.  (<u>Id.</u> at ¶ 17.)  Plaintiff also alleges that Petros' breach caused ConocoPhillips, and by assignment plaintiff, to suffer actual damages of $486,887.34.  (<u>Id.</u> at ¶ 12, 18-20.)  Plaintiff further alleges that under the terms of the Contract, Petros is responsible for paying any attorneys' fees, costs of suit, and reasonable expenses incurred in connection with collection of debts or liabilities owed to plaintiff as the lawful assignee under the Contract.  (<u>Id.</u> at ¶ 19.)

Based on the above allegations, the court concludes that plaintiff's breach of contract claim against Petros in regards to the Contract has merit and is sufficiently pled.

b. <u>Breach of the Guaranty</u>

Next, the court considers what law should apply to plaintiff's breach of contract claim regarding the Guaranty given that agreement's choice of law provision.

As noted above, the Guaranty specified that it would be governed by Texas law.  (ECF No. 1 at 47.)  "In determining the enforceability of a choice of law provision in a diversity action, a federal court applies the choice of law rules of the forum state, in this case California."  <u>Hatfield v. Halifax PLC</u>, 564 F.3d 1177, 1182 (9th Cir. 2009).  The California Supreme Court has explained California's choice-of-law rules as follows:

> [T]he proper approach . . . is for the court first to determine either (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law.  If neither of these tests is met, that is the end of the inquiry, and the court need not

enforce the parties' choice of law.  If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California.  If there is no such conflict, the court shall enforce the parties' choice of law.  If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue"…If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 466 (1992) (emphasis in original); see also Hatfield, 564 F.3d at 1182 (outlining and applying California choice-of-law rules).

In this case, the State of Texas has a substantial relationship to the parties, because it is plaintiff's alleged principal place of business.  (Compl. ¶ 2.)  Thus, there is also a reasonable basis for the parties' choice of law.  See Hatfield, 564 F.3d at 1183 ("The fact that Halifax is a United Kingdom company is sufficient to establish a substantial relationship between England and the parties, such that there is a reasonable basis for applying the English choice of law provision.").  There does not seem to be any reason for disregarding the choice of law by the parties to the Guaranty.  As the standards for breach of contract are essentially the same for both California and Texas, no fundamental public policy of California's would be violated by applying Texas law.  Therefore, the court finds that the Guaranty's choice-of-law provision applying Texas law to claims asserted pursuant to the terms of that agreement should be enforced.

Under Texas law, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach.  Velvet Snout, LLC v. Sharp, 441 S.W.3d 448, 451 (Tex. App. 2014).  In the context of guarantees, Texas law specifically holds that where a "prompt and complete payment" of the debts of the entity is being guaranteed, the default of that entity is a breach of the guarantee.  Mid-S. Telecommunications Co. v. Best, 184 S.W.3d 386, 391 (Tex. App. 2006).

Here, plaintiff alleges that Rai executed the Guaranty guaranteeing Petros' present and future debts to ConocoPhillips and attaches the Guaranty as Exhibit B to its complaint.  (Compl. ¶ 22; ECF No. 1 at 47.)  Plaintiff further alleges that ConocoPhillips assigned all of its rights, title

1    and interest in the Contract and Guaranty to plaintiff, that plaintiff demanded that Rai pay Petros'

2    debts under the Contract, and that despite plaintiff's demands, Rai refused to pay.  (Id. at ¶ 23-

3    24.)  Plaintiff also alleges that the terms of the Guaranty make Rai liable for any costs of

4    collection and/or attorneys' fees incurred by plaintiff in collecting on the guarantee.  (Id. at ¶ 25.)

5    Finally, plaintiff alleges that it suffered damages of $486,887.34 plus interest and attorneys' fees

6    as a result of defendants' breaches of the Contract and Guaranty.  (Id. at ¶ 26.)

7         Based on the above, the court concludes that plaintiff's breach of contract claim against

8    Rai in regards to the Guaranty has merit and is sufficiently pled.

9         Accordingly, the second and third Eitel factors favor the entry of a default judgment with

10   regard to the claims plaintiff alleges in its complaint.

11                    3.   Factor Four: The Sum of Money at Stake in the Action

12        Under the fourth factor cited in Eitel, "the court must consider the amount of money at

13   stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at

14   1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D.

15   Cal. 2003).  Through its motion for default judgment, plaintiff seeks a judgment in excess of

16   $666,847.65 against the defaulted defendants.  That sum consists of $486,887.34 in actual

17   damages, $164,341.15 in pre-judgment interest until the entry of default, $14,469.50 in attorneys'

18   fees and $1,149.66 in costs, and does not include pre-judgment interest between the entry of

19   default and the judgment, which plaintiff alleges should accrue at rate of $133.39 per day, or the

20   post-judgment interest that plaintiff also requests.

21        Given the substantial amount of money at stake, this factor weighs against the entry of

22   default judgment.  See, e.g., Joe Hand Promotions v. Streshly, 655 F. Supp. 2d 1136 (S.D. Cal.

23   2009) (proposed award amount of $100,975 was "manifestly excessive under existing

24   law"); J & J Sports Productions. v. Cardoze, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010)

25   ("a large sum of money at stake would disfavor default damages," such as damages totaling

26   $114,200); see also Board of Trustees of the Sheet Metal Workers v. Vigil, 2007 WL 3239281, at

27   *2 (N.D. Cal. Nov. 1, 2007) ("[D]efault judgment is disfavored if there were a large sum of

28   money involved.").

1    Furthermore, this is not a case involving a breach of a direct promise to pay or repay large

2    sums of money.  See BR N. 223, LLC v. Glieberman, 2012 WL 639500, at *2 (E.D. Cal. Feb. 27,

3    2012) (finding that seriousness of failure to repay loan of $39,291,542.28 weighed in favor of

4    default damages ultimately totaling $81,170,331.74); Am. Boat Racing Ass'n v. Richards, 2015

5    WL 1320956, at *6 (E.D. Cal. Mar. 24, 2015) (finding complete failure to pay $188,851.00 owed

6    as consideration under a contract supported default judgment awarding damages in that amount).

7    Nor is this a case where a legislature has evaluated the seriousness of the underlying acts, such as

8    cases involving statutory damages or liquidated damages pursuant to a statutory scheme.  See J &

9    J Sports Prods., Inc. v. Hernandez, 2010 WL 1980186, at *4 (E.D. Cal. May 17, 2010), report and

10   recommendation adopted, 2010 WL 2650526 (E.D. Cal. July 1, 2010) (finding request for

11   $110,000 in statutory damages did not weigh against default judgment because the statutes

12   involved contemplate such an award under certain circumstances); Bd. of Trustees of the

13   Laborers Health & Welfare Trust Fund for N. California v. Tear-N-It Up Demolition, Inc., 2015

14   WL 6956601, at *6 (N.D. Cal. Sept. 8, 2015), report and recommendation adopted sub nom. Bd.

15   of Trustees of the Laborers Health v. Tear-N-It Up Demolition, Inc., 2015 WL 6952784 (N.D.

16   Cal. Nov. 10, 2015) (Liquidated damages for unpaid contributions in ERISA cases capped by

17   statute at 20% of the unpaid contributions); Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d

18   1039, 1064 (N.D. Cal. 2010) (finding where statutory scheme contemplated up to $4.9 million

19   and actually warranted $470,000 in statutory damages for the underlying acts of willful copyright

20   and trademark violations, liquidated damages of $840,000 for violations of Craiglist's Terms of

21   Use were not unreasonable).  But see Craigslist, Inc. v. Branley, No. 11-3545 SC, 2012 WL

22   929847, at *5 (N.D. Cal. Mar. 19, 2012) (finding large sum of money weighed against default

23   judgment when sole damages requested were $1,756,400 in liquidated damages for violation of

24   Craigslist's Terms of Use).

25       Here, plaintiff claims nearly half a million dollars in liquidated damages, a sum that will

26   increase dramatically once pre- and post-judgment interest are fully calculated.  (ECF No. 14-4 at

27   3-4.)  Given that defendants' breaches were largely a result of Petros' failure to purchase fuel

28   from plaintiff's predecessor in interest in sufficient quantities — likely as a result of the cessation

of Petros' business (see Compl. ¶ 3, 9) — the alleged underlying activities simply are not serious enough to allow this factor to weigh in favor of granting default judgement.  However, this is only one factor among seven and, given the circumstances discussed in more detail below, it does not control the outcome.

### 4.  Factor Five: The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations and documentation supporting its claims.  The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.  As such, the undersigned concludes that the fifth factor favors a default judgment.

### 5.  Factor Six: Whether Default was Due to Excusable Neglect

In this case, there is simply no indication in the record that defendants' default was due to excusable neglect.  However, a review of the docket for this action indicates that neither defendant has made an appearance at any point during the more than one-year period since this action was initiated.  Accordingly, this Eitel factor favors the entry of a default judgment.

### 6.  Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy is not dispositive, especially where a defendant fails to appear or defend itself in an action.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist v. Naturemarket, 694 F. Supp. 2d at 1061. Accordingly, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits —that policy does not tip the scales sufficiently to preclude the entry of default judgment on the

11

1   facts of this case.

2           In sum, five <u>Eitel</u> factors weigh strongly in favor of granting default judgment.  While the

3   sum of money plaintiff requests does not weigh in favor of granting default judgment as courts

4   have interpreted that factor in the past, that factor cannot be said to weigh heavily against default

5   judgment given the fact that plaintiff seeks such damages pursuant to a duly negotiated

6   contractual relationship.  Under the circumstances, the sum of money and the policy in favor of

7   deciding cases on the merits do not outweigh the remaining factors.  Therefore, the undersigned

8   concludes that plaintiff is entitled to the entry of default judgment against defendants, and

9   recommends that such a default judgment be entered.  All that remains is the determination of the

10  relief to which plaintiff is entitled.

11                          B.  <u>Terms of the Judgment to be Entered</u>

12          After determining that a party is entitled to entry of default judgment, the court must

13  determine the terms of the judgment to be entered.  As stated above, plaintiff seeks a judgement

14  of $666,847.65 against the defaulted defendants, not including pre-judgment interest after the

15  entry of default, which plaintiff alleges should accrue at rate of $133.39 per day, or any post-

16  judgment interest.  This is a large amount, and one of the factors the court is free to consider in

17  exercising its discretion in granting default judgment is the sum of money to be awarded.  <u>See</u> <u>J &</u>

18  <u>J Sports Prods., Inc. v. Jurado</u>, 2011 WL 6153605 (E.D. Cal. Dec. 12, 2011); <u>J & J Sports</u>

19  <u>Productions, Inc. v. Betancourt</u>, 2009 WL 3416431 at *3 (S.D. Cal. Oct. 20, 2009).  Nevertheless,

20  considering plaintiff's briefing and the record in this case, the undersigned recommends that

21  damages be awarded in the full amount requested.

22                          1.  <u>Liquidated Damages of $479,387.34</u>

23          The bulk of plaintiff's damages come from its claim for liquidated damages in the amount

24  of $479,387.34.  As discussed above, the Contract provides that if Petros breached the Contract,

25  ConocoPhillips was entitled to $0.03 for each gallon ConocoPhillips could reasonably expect

26  Petros to have purchased.  (Contract, Section 27(a)(1), ECF No. 1 at 29; Cunningham Decl. ¶ 3.)

27  ConocoPhillips' reasonable expectation was defined in the Contract as the minimum number of

28  gallons which Petros was required to purchase per month multiplied by the number of months and

                                           12

1    partial months remaining in the term of the Contract.  (Id.)  In support of its claim for

2    $479,387.34 in liquidated damages under this clause, plaintiff submits a declaration which states

3    that the monthly minimum gallons under the terms of the Contract was 126,212.8,[3] and the

4    number of months and partial months remaining in the term was 126.6082191.[4]  (Contract,

5    Exhibit D, ECF No. 1 at 38; Cunningham Decl. ¶ 3.)  Therefore, the liquidated damages amount

6    of $479,387.34 is well pled and supported by the evidence plaintiff provides in support of its

7    motion for default judgment.  (Id.)

8                              2. Damages for Auto Gas Repayment Program

9          Plaintiff has also properly submitted a declaration explaining the origin of the $7,500.00

10   plaintiff claims was due under the Auto Gas Replacement Program.  (Compl. ¶ 12; ECF No. 18-1

11   at 1-4.)  As discussed above, ConocoPhillips advanced that money as part of the ongoing

12   franchise relationship between it and Petros under the Contract.  (Id.)  When that relationship

13   ended in March 15, 2016, the $7,500.00 advance became immediately due.  Therefore, the

14   consequential damages requested by plaintiff in the amount of $7,500.00 are well pled and

15   supported by the evidence provided by plaintiff in support of its motion.  (Id.)

16                              3. Pre-judgment Interest

17         "Prejudgment interest in a diversity action is . . . a substantive matter governed by state

18   law."  U.S. Fid. & Guar. Co. v. Lee Invs. LLC, 641 F.3d 1126, 1139 (9th Cir. 2011).  When a

19   contract includes a valid choice of law provision, the court applies the law of the chosen state to

20   find the appropriate prejudgment interest.  Plaintiff claims pre-judgment interest over the actual

21   damages under California law, which provides a 10 percent annual interest rate on obligations

22

23   [3] Calculated by adding the quarterly contract volume for gasoline (459,948 gallons) to the
     quarterly contract volume for diesel (13,350 gallons) to find the quarterly volume of fuel
24   (473,298 gallons), then dividing by 3 to find the monthly contract volume (157,766 gallons), and
     then multiplying by 8/10ths, or 80 percent, to find the monthly minimum volume that Petros was
25   contractually obligated to purchase (126,212.8 gallons).

26   [4] Calculated by taking the number of days between the date of the alleged breach, March 15,
27   2012, and the end of the term, September 30, 2022, (3,851 days), divided by the 365 days in a
     single year to get the number of years (10.5506849315 years), then multiplying by 12 to get the
28   number of months (126.608219178 months).

that do not specify a legal rate of interest.  (Ceizler Decl. ¶ 8-9; ECF No 14-1 at 15); Cal. Code of Civ. Proc § 3289(b).  Therefore, plaintiff seeks recovery of $164,341.15 in pre-judgment interest from the date of the breach until the date of the entry of default, and pre-judgment interest accruing at $133.39 per day between the entry of default and the requested default judgment. (Ceizler Decl. ¶ 8-9; ECF No 14-1 at 15).

While the Guaranty is governed by Texas law, plaintiff seeks these amounts from defendant Rai not as pre-judgment interest as such, but as one of the liabilities of defendant Petros for which Rai is a guarantor.  (ECF No. 18 at 2-3.)  Texas law provides that where there is an unconditional guarantee, that the guarantor "is liable as a primary obligor."  <u>Arndt v. Nat'l Supply Co.</u>, 633 S.W.2d 919, 923 (Tex. App. 1982), <u>writ refused NRE.</u>  Based on this principle, Texas courts have held that where the underlying contract provides for interest, that interest is part of the liabilities adopted by an unconditional guaranty.  <u>Mayfield v. Hicks</u>, 575 S.W.2d 571, 576 (Tex. App. 1978), <u>writ refused NRE</u>.

Here, the relevant provision reads:

> [Amarjit S. Rai] guarantees unconditionally the full and prompt payment of all present and future indebtedness of Petros Rai Stations, LLC . . . to ConocoPhillips Company, including without limitation that indebtedness arising from (1) ConocoPhillips Company sales of petroleum products or other merchandise to Purchaser, (2) any loans to Purchaser, whether one or more, now or hereafter existing, or (3) ***any and all other loans, indebtedness, liabilities, obligations and duties of every kind and character***, whether now or hereafter existing or arising . . . .

(ECF No. 1 at 47 (emphasis added).)

This is clearly an unconditional guaranty that, on its face, appears to cover any pre-judgment interest that would arise as a result of Petros' breach under the Contract.  While there does not appear to be any Texas case law specifically addressing liabilities under a guaranty created through pre-judgment interest, the logic and force of Texas law and the plain language of the guaranty at issue here indicates that plaintiff can and should recover the pre-judgment interest accruing under the terms of the Contract against either defendant.

////

14

1   Therefore the undersigned recommends plaintiff be awarded $164,341.15 in prejudgment

2   interest from the date of the breach until the date of the entry of default, and prejudgment interest

3   accruing at $133.39 per day between the entry of default and the date on which judgment is to be

4   entered.

5   4. <u>Attorneys' Fees and Costs</u>

6   Plaintiff requests that it be awarded reasonable attorneys' fees and costs.  The two

7   contracts provide that ConocoPhillips, and therefore plaintiff as its assignee, can recover

8   attorneys' fees and costs accrued in connection with its efforts to recover from defendants under

9   the Contract and Guaranty.  (ECF No. 1 at 32, 47.)  California and Texas both enforce contractual

10  provisions allowing the collection of reasonable attorneys' fees.  Cal. Civ. Proc. Code § 1021; <u>Gil</u>

11  <u>v. Mansano</u>, 121 Cal. App. 4th 739, 742-43 (2004); Tex. Civ. Prac. & Rem. Code Ann. § 38.001

12  (allowing prevailing party in a breach of contract action to collect attorneys' fees as a default

13  rule); <u>Intercontinental Grp. P'ship v. KB Home Lone Star L.P.</u>, 295 S.W.3d 650, 653 (Tex. 2009)

14  (finding that parties may specifically contract for a broader or narrower attorney's fees provision

15  than the default rule laid out by statute).

16  Plaintiff seeks an award of attorneys' fees in the lodestar amount of $14,469.50.  (Ceizler

17  Decl. ¶ 2-3; George Decl. ¶ 7-8.)  The rates requested are based on 10.3 hours of work by

18  attorneys Darin L. Brooks and Dawn Ceizler at a rate of $225.00 per hour, 60.7 hours of work by

19  attorneys John G. George, Jr. and Brian E. Waters at a rate of $175.00 per hour, and 20.4 hours of

20  work by a paralegal at a rate of $75.00 per hour.  (George Decl. ¶ 7.)  While the court notes that

21  the declarations plaintiff provides in support of its request only set forth the experience and

22  expertise of Mr. George and not that of any other attorneys (George Decl. ¶ 7), the hourly rates

23  themselves appear reasonable.

24  Furthermore, plaintiff has submitted a declaration and attached exhibits detailing the hours

25  spent per task.  (ECF No. 18-2 at 1-23.)  Plaintiff's counsel spent just over 13 and a half hours

26  researching the case and facts prior to deciding to pursue the suit, which required, among other

27  things, an analysis of defendants' bankruptcy status.  (ECF No. 18-2 at 5-8.)  Plaintiff's counsel

28  then spent roughly 23 hours drafting the complaint and other initial filings and filing the lawsuit

1   itself.  (ECF No. 18-2 at 7-12.)  After this action was initiated, plaintiff's counsel spent around

2   twenty-one and a half hours attempting to serve defendants, including drafting a motion for

3   service by publication and ultimately coordinating the service by publication.  (ECF No. 18-2 at

4   17-18.)  Finally, over forty hours were spent preparing plaintiff's motion for default judgment and

5   necessary attachments, as well as coordinating with plaintiff's personnel and the other attorneys

6   working on the matter, up to the filing of the instant motion.  (ECF No. 18-2 at 18-21.)  After a

7   review of the exhibits, the undersigned finds that the overall number of hours for which plaintiff

8   seeks attorneys' fees is reasonable in light of the tasks performed, and recommends that the

9   requested fees be awarded in full.

10          Plaintiff also seeks an award of $1,149.66 in costs, consisting of a filing fee of $400 to

11  commence this action and $749.66 in service of process fees.  (Ceizel Decl., Exhibit A, ECF No.

12  14-1 at 5-13.)  The undersigned finds these costs reasonable and therefore recommends that they

13  be awarded.

14          IV.    <u>CONCLUSION</u>

15          In sum, the undersigned finds that plaintiff is entitled to $479,387.34 in liquidated

16  damages (based on its claim under the terms of the Contract), $7500.00 in compensatory damages

17  (based on its claimed loss of its Auto Gas Replacement Program advance to Petros), $164,341.15

18  in prejudgment interest accrued from the date of the breach (March 15, 2012) until the date of the

19  entry of default (July 30, 2015), attorneys' fees in the amount of $14,469.50, and costs in the

20  amount of $1,149.66, for a total of $666,847.65, in addition to pre-judgment interest accruing at a

21  rate of $133.39 per day between the entry of default (July 30, 2015) and the date on which

22  judgment is to be entered with any post-judgment interest accruing thereafter in accordance with

23  federal law.  Furthermore, because defendant Rai is liable under the Guaranty for any damages

24  resulting from Petros' breach of the Contract, the above damages, fees, costs, and interest should

25  be awarded jointly and severally against both defendants.

26          IT IS HEREBY ORDERED that within five days after these findings and

27  recommendations are filed, plaintiff shall serve a copy of the findings and recommendations on

28  defendants by mail at the address where service of process was effected, or at any more recent

16

1    address known to plaintiff, and shall file a proof of such service forthwith.[5]

2           For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

3           1. Plaintiff's January 27, 2016 motion for default judgment against defendants Petros Rai

4    Stations, LLC and Amarjit S. Rai (ECF No. 14) be GRANTED.

5           2. Judgment be entered against defendants jointly and severally in the amount of

6    $666,847.65,[6] plus pre-judgment interest accruing at $133.39 per day between the date of the

7    Clerk of Court's entry of default and the date on which judgment is to be entered with any post-

8    judgment interest accruing thereafter in accordance with federal law.

9           3. The Clerk of Court be directed to close this case.

10          These findings and recommendations are submitted to the United States District Judge

11   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

12   days after being served with these findings and recommendations, any party may file written

13   objections with the court and serve a copy on all parties.  Such a document should be captioned

14   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15   shall be served on all parties and filed with the court within fourteen (14) days after service of the

16   objections.  The parties are advised that failure to file objections within the specified time may

17   waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

18   Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

19          IT IS SO ORDERED AND RECOMMENDED.

20   Dated:  April 26, 2016

21

22   _____
                                        KENDALL J. NEWMAN
                                        UNITED STATES MAGISTRATE JUDGE

23   [5] The court is cognizant that defendant Rai was served summons in this action by publication
24   because plaintiff could not reasonably serve him at his most recent residential address.  (ECF No.
     9.)  Nevertheless, with regard to the service of these findings and recommendations, plaintiff does
25   not need to do anything more than mail a courtesy copy to defendants' last known addresses, and
     any subsequently learned addresses for defendants.

26
     [6] This total amount consists of $479,387.34 in liquidated damages, $7500.00 in compensatory
27   damages, $164,341.15 in prejudgment interest accrued from the date of the breach until the date
     of the entry of default, attorneys' fees in the amount of $14,469.50, and costs in the amount of
28   $1,149.66.